UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN and PATTY WINDER, husband and wife as assignees of ARIEL GRUBB, a single person, assignor,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurer licensed to do business in the State of Washington,<br><br>Defendant. | NO. 2:16-CV-0399-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 11). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files therein, and is fully informed. For the reasons discussed below, the Defendant's Motion for Summary Judgment (ECF No. 11) is **GRANTED**.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

Plaintiffs John Winder, Patty Winder, assignees of Ariel Grubb bring this action against State Farm Fire and Casualty Company (State Farm) for bad faith, Insurance Fair Conduct Act violation, breach of insurance contract, and Consumer Protection Act violation. ECF No. 1-2 at ¶¶ 3–6. Defendants move for summary judgment on all claims. ECF No. 11.

## FACTS

The following facts are not disputed. On November 9, 2012, Ariel Grubb was involved in a motor vehicle accident when Ms. Grubb struck Patty Winder while she was crossing the street in Pullman, Washington. ECF Nos. 12 at ¶ 1; 19 at ¶ 6. Ms. Grubb was driving a car owned by her father, David Grubb, and insured by State Farm. ECF Nos. 12 at ¶ 3; 19 at ¶ 6. Mr. Grubb carried a personal liability umbrella policy (PLUP) with State Farm. ECF Nos. 12 at ¶ 4; 19 at ¶ 12. State Farm opened a claim under the auto liability policy on November 10, 2012, after receiving notice of the accident. ECF Nos. 12 at ¶ 7; 19 at ¶ 8. In October 2014, as part of its coverage investigation, State Farm reviewed if Ms. Grubb qualified as an insured under the PLUP policy. ECF Nos. 12 at ¶ 14; 19 at ¶ 21. Under a PLUP policy, an "insured" means "you and your relatives whose primary residence is your household." ECF No. 12-2 at 6 (Ex. A).

On November 14, 2015, Ms. Grubb confirmed that she used her parents address for mail as she was moving around various apartments while at veterinary school in Pullman, Washington. ECF Nos. 12 at ¶ 21; 19 at ¶ 24; 12-4 at 2 (Ex. C). She graduated from college in May 2008, lived with her parents and in Portland for a year, and then started veterinary school where she mainly supported herself with student loans. *Id.* She graduated veterinary school in May 2013 and moved to Portland. *Id.*

On December 1, 2014, State Farm denied coverage to Ms. Grubb under the PLUP policy. ECF No. 12-6 at 2–3 (Ex. E). In March and April 2015, State Farm requested further information from Ms. Grubb. She responded that from 2009 to 2013 she stayed at the Valleyford, Washington address where her parents lived during school breaks, part of the summer breaks, and would visit on weekends. ECF Nos. 12 at ¶¶ 26–28; 19 at ¶¶ 27–29; 12-10 at 2 (Ex. I). She kept her belongings at her parents' house while she was traveling abroad and stayed there during her clinical year rotations. *Id.* Ms. Grubb stated that she considered the Pullman address as her primary residence and her Valleyford address as her permanent legal residence. ECF No. 12-10 at 3. Her parents helped support her by paying her car bills, health insurance, and cell phone bills. ECF No. 12 at ¶ 29. She financed her education and other living expenses with federal loans. *Id.* Ms. Grubb's parents stated that she was free to come and go, "provided she extended

some common courtesy about letting them know." ECF Nos. 12 at ¶ 31; 19 at ¶ 31, 12-11 at 2 (Ex. J).

On June 22, 2015, the Winders filed suit against Ms. Grubb and they entered into a covenant judgment settlement. ECF Nos. 12 at ¶¶ 33–34; 19 at ¶¶ 32, 39. On September 16, 2016, a judgment was entered against Ms. Grubb in the amount of $700,000. ECF No. 19 at ¶ 40. This case was filed on October 12, 2016 in Spokane County Superior Court. ECF No. 1-2 at 2. On November 10, 2016, State Farm removed the case to this Court under 28 U.S.C. § 1332. ECF No. 19 at ¶ 43.

**DISCUSSION**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson*, 477 U.S. at 256.

In ruling on a motion for summary judgment, the court views the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). There must be evidence on which a jury could reasonably find for the plaintiff and a "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**A. Valleyford and Pullman Residences**

State Farm contends that it is clear Ms. Grubb's primary residence was in Pullman, but Plaintiffs argue she primarily resided at the Valleyford address. ECF Nos. 11 at 5; 20 at 10. In Washington, interpreting an insurance policy is a question of law where the policy is construed as a whole. *Am. Star Ins. Co. v. Grice*, 121 Wash.2d 869, 874 (1993), *supplemented*, 123 Wash.2d 131 (1994). The court will not modify a contract if the policy language is clear and unambiguous. *Id.* If the language is fairly susceptible to two different reasonable interpretations, then the court may apply extrinsic evidence to resolve ambiguities. *Id.* at 874–75. If ambiguity remains, then the court will construe the contract against the insurer. *Id.* Here, the parties dispute whether "primary residence" is an ambiguous term. ECF Nos. 20 at 12; 23 at 5.

//

### 1. Resident of the same household

Washington courts have addressed how to determine "residence." *State Farm Mut. Auto. Ins. Co. v. Frounfelter*, 218 F. Supp. 3d 1215, 1218 (W.D. Wash. 2016) (citing *Pierce v. Aetna Cas. & Sur. Co.*, 29 Wash. App. 32 (1981)). In *Pierce*,[1] the court outlined the relevant factors in determining who is a resident of the same household: "(1) the intent of the departing person, (2) the formality or informality of the relationship between the person and the members of the household, (3) the relative propinquity of the dwelling units, and (4) the existence of another place of lodging." *Pierce*, 29 Wash. App. at 37–38 (citation omitted).

The Court considers the *Pierce* factors below to determine Ms. Grubb's residence. First, the parties dispute whether Ms. Grubb intended to depart permanently from the Valleyford address. Ms. Grubb stated, "I considered the

---

[1] State Farm argues that *Pierce* is not instructive because it involves the residency of a child with divorced parents. ECF No. 23 at 3. State Farm asserts that the case does not address the policy language at issue here, arguing that the *Pierce* factors are used to determine if one is a resident of the same household. *Id.* at 3–4. Here, the term in dispute is "primary residence." The Court notes the importance of the word primary and will address it in the analysis below, but finds the *Pierce* factors instructive in determining residency.

possibility of living there after graduation as well if I found suitable employment within reasonable driving distance, but figured I would more likely be moving out on my own." ECF No. 12-10 at 3 (Ex. I). Therefore, it is more likely that Ms. Grubbs did not intend to return to the Valleyford address. Second, the family was close as Ms. Grubb was free to come and go from the house where she had a bedroom. Yet, Ms. Grubb's parents stated that she was to let them know when she would be coming. ECF No. 12-11 at 2 (Ex. J). Third, the Valleyford address is about 85 miles from Pullman. ECF No. 12-4 at 3 (Ex. C). Ms. Grubb participated in only three teaching hospital clinical rotations in Spokane; July 2nd to 5th, November 5th to 8th and December 16, 2012. ECF No. 21-3 at 28–29. At the time of the accident, Ms. Grubb stayed in Valleyford from Monday through Thursday while doing a clinical rotation in Spokane and traveled back to Pullman on Friday the 9th of November. *Id*. at 29–30. Yet, this distance is much further than the mere 15 miles found as close in *General Motors Acceptance Corp. v. Grange Ins. Ass'n* cited by Plaintiffs. ECF No. 20 at 9; *Gen. Motors Acceptance Corp. v. Grange Ins. Ass'n*, 38 Wash. App. 6, 11 (1984). Fourth, Ms. Grubb entered into year long leases for the apartments she rented in Pullman. ECF No. 11 at 5. In 2012, her bank accounts, job applications, and bills listed her Pullman address. Packages were delivered to her Pullman address. *Id.* In considering these conflicting factors, it is possible that the Valleyford address could be considered a

residence of Ms. Grubb's, but regardless the Court does not find that it is her primary residence as discussed below.

### 2. Primary residence

When words in a policy are undefined, courts look to the dictionary to determine the common meaning of the word. *Frounfelter*, 218 F. Supp. 3d at 1218 (citing *Allstate Ins. Co. v. Peasley*, 131 Wash.2d 420, 425 (1997)). Here, State Farm emphasizes the term "primary" as "first or highest in rank or importance," "chief," or "principal," as defined in Dictionary.com, Merriam-Webster.com, and Oxford. ECF No. 11 at 6 (citations omitted). Plaintiffs also found the definitions above, along with "first in order of time or development" and "first in time; earliest; primitive." ECF No. 20 at 6 (citations omitted). Yet, the parties differ in their interpretation of these definitions. State Farm finds primary to mean "principal residence or where one mainly resides." ECF No. 11 at 7. Whereas Plaintiffs find that primary residence is "either her first residence in time or her most important residence." ECF No. 20 at 6.

Under the definitions of primary considered by both parties, the Court concludes that the term is not ambiguous. The Court agrees with State Farm's interpretation that primary does not refer to a person's first residence in time or then everyone's childhood home would be considered their primary residency. This is not a reasonable interpretation in light of the policy as a whole. Primary is

best understood as the most important or where the person spends most of her time. Here, Ms. Grubb spent her time at her Pullman apartment where she attended graduate school. While she visited the Valleyford address and stayed there during some of the weekdays on her Spokane rotation, this was merely during one rotation throughout her entire time at veterinary school. In considering all the evidence alleged, the Court finds that Ms. Grubb stayed at the Pullman address for most of her time where she paid her own rent, school, and most of her living expenses. Accordingly, the Court grants Defendant's Motion for Summary Judgment as the term primary residence is not ambiguous and refers to Ms. Grubb's Pullman apartment, meaning she is not considered insured under the PLUP policy.

**B. Extra-Contractual Claims**

State Farm alleges that since Ms. Grubb is not an insured under the PLUP policy, she has no extra-contractual rights to assign to the Winders. ECF No. 11 at 10. Since the Winders are not insureds under the policy, they cannot independently assert the causes of action for breach of good faith, Insurance Fair Conduct Act (IFCA), or Washington Consumer Protection Act (CPA) against State Farm. *Id.* at 11.

Under the claims for breach of duty of good faith and CPA, a third party claimant has no right of action against an insurance company without an assignment. *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, 176 Wash.

App. 185, 201 (2013). The Washington Supreme Court rejected good faith claims brought by third parties and found nothing in the CPA's regulatory language that gave third party claimants the right to sue. *Tank v. State Farm Fire & Cas. Co.*, 105 Wash.2d 381, 393 (1986). The Court concluded that enforcement of these rules on behalf of third parties should not be the province of individual third party claimants, but the Insurance Commissioner. *Id.* Additionally, "[t]hird-party claimants may not sue an insurance company directly for an alleged breach of the duty of good faith under a liability policy." *Dussault ex rel. Walker-Van Buren v. Am. Int'l Grp., Inc.*, 123 Wash. App. 863, 867 (2004) (citing *Tank*, 105 Wash.2d at 391). Here, Ms. Grubb is unable to assign her claims to the Winders, as she is not an insured under the policy. The Winders are then unable to assert their claims directly against State Farm and so their causes of action under breach of good faith and CPA are dismissed.

Under IFCA, "Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained." RCW 48.30.015(1). A first party claimant is defined as "an individual … asserting a right to payment as a covered person under an insurance policy or insurance contract." RCW 48.30.015(4). "The purpose of IFCA is to protect individual policy holders from unfair practices by their insurers." *Trinity*

*Universal*, 176 Wash. App. at 201 (citation omitted). The court in *Trinity* determined that nothing in the language of IFCA gives third party claimants the right to sue. *Id.* The court found CPA and IFCA comparable, concluding that there is no reason to treat the claims differently with respect to assignability and a claim cannot be asserted without assignment. *Id.* at 202–03. Here, Ms. Grubb is unable to assign her IFCA claim because she is not a covered person under the PLUP policy. As in the good faith and CPA claims, the Winders are unable to bring the IFCA claim without assignment. Accordingly, the Court dismisses the extra-contractual claims as Ms. Grubb is not an insured and the Winders lack standing.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 11) is **GRANTED**.
2. All remaining motions, deadlines, hearings, and trial are **VACATED**.

The District Court Executive is directed to enter this Order and Judgment for Defendant, furnish copies to counsel, and **CLOSE** the file.

**DATED** October 20, 2017.



THOMAS O. RICE
Chief United States District Judge